Good morning, Your Honors. May it please the Court, Kelsey Woodford for Appellant Michael Ray Fuqua. I would like to reserve four minutes of our time for rebuttal. I will discuss why this Court should reverse the District Court's finding of non-exhaustion and remand this civil rights case for trial on the merits, and my co-counsel Jane Kestner will discuss why, at the very least, this Court should remand the District Court for reconsideration of exhaustion in light of Ross v. Blake. Because the Arizona Department of Corrections disciplined Mr. Fuqua for exercising his religious beliefs, he exhausted the only remedy available to protect his rights, the inmate discipline procedure, Order 803. In the limited context of this case, the interaction between the catch-all grievance procedure, Order 802, and the specific disciplinary procedure, Order 803, required Mr. Fuqua to challenge his religious belief in non-exhaustion discrimination through disciplinary process. Your Honor, Order 802, the catch-all grievance procedure, the text is, it is the default process for filing grievances, but the text has specific carve-outs that warn that it cannot be used when, when the primary issue is within the scope of another procedure. The text specifically reads, and you can see the question is sort of which is the, there's a turducken, right? There's an issue that's common to both. And so is your argument that the religious freedom claim is premised in both and it's only the disciplinary proceeding where he could get fully, full relief? Is that your argument? Your Honor, the argument is that the discipline and the religious claim are inextricable because the discipline that the prison put on Mr. Fuqua for exercising his religious beliefs based on the text of 802 conclusively shunted him to Order 803. So the text reads in 802 that that procedure does not serve as a duplicate or substitute appeal process. Right. I'm aware of that. So if he had, and I appreciate that, but here's what I'm trying to get at. If he had, and I appreciate this was a sticky problem for him, but if he had proceeded on the, in the grievance procedure and prevailed, would that have been an affirmative defense in the disciplinary procedure? Your Honor, I don't think that the he could 802 is not available to him. He could not have used the 802 procedure. At all. His religious claim, no. Okay. Based on the text. So the text says that inmates who attempt to file grievances to appeal for actions outlined in one of these external procedures will be instructed to follow the independent procedure, and the procedure is available only when the primary issue is outside the scope of another established appeal. But we know that Mr. Fuqua's primary issue is within the scope of 803, and therefore, 802's language conclusively put him in 803 territory. Is it your position that the two informal letters that he wrote initiated 802? No, Your Honor. Those informal letters can actually be used for many different, different purposes. And he was largely just communicating with staff at that point. His letters were to the chaplain, the work coordinator, and the kitchen manager. Were they all issued before he had lost his job? Yes, Your Honor. So it seems to me that those two addressed requests to be reassigned. Is that right? They yes, they request that he can trade his shifts, yes. All right. And so then, but he was dismissed from his job on the 24th. Is that right? He was, and he received discipline on the 24th. Right. And so the opposing counsel's argument is that he should have initiated at that point, and at that point, he didn't know that there was a disciplinary procedure, right? What is your response to that? Your Honor, the prison's own records actually countermand that point. So on page 74 of the record and page 77 of the record, we see in the prison's own documents, 74 is the response to Step 1 appeal from the deputy warden, and 77 is the inmate discipline report. Both of them say on 74, on 924.14, you received discipline. And on page 74, they say, Inmate Fuqua was verbally placed on report. So he received discipline on that day. And based on the language of 802, that did put him in 803. So there was no time. There was none of this gap where he could have filed in 802. He was immediately disciplined after this incident of being terminated and put on report. So the day that he was escorted back to his cell, that's it, right? Yes. Yes. So he is in the disciplinary process at that point. We know that this is within the scope of the prison's own records. Oh, wait a minute. You said, I'm sorry, but you said he's in the disciplinary process. He lost his job, but was he on notice that there was going to be a disciplinary hearing at that point? Yes, Your Honor. So page 77 states that Mr. Fuqua was verbally placed on report. And page 74, the deputy warden actually says, On 924.14, you received discipline. On 74? Yes. Okay. I'm looking at 74. Yeah. I believe it's the second paragraph of what the deputy warden writes there. 924, you received discipline after you refused. Yes. So at and this is dated, of course, this is dated at the termination, at the end of the appeal. Yes, Your Honor. This was actually midway through the process. He has another appeal that he files with the director's designee. But the issue is, is that because he was in this disciplinary procedure, both based on the scope that his religious claims are inextricable from his discipline at this point, because they were both an element of and a defense to this discipline, and the prison's own behavior. So we know that the prison had notice of and opportunity to address these claims, both in the lead-up to and the aftermath of the discipline. We know that they addressed the merits in both the deputy warden's response to his appeal and in the director's designee response to his second appeal. So the prison's own behavior shows that they had the opportunity to address, but instead they acknowledged and rejected these claims at this point. Opposing counsel is going to argue, because they've argued in their brief, that this issue wasn't one of the issues that's really even addressed at a disciplinary proceeding, right, that there's a due process inquiry and there's an inquiry about whether the charge is supported, and then there's a review of the appropriateness of the discipline. And yet there's an entry, and I'll have the question for both counsel, there's an entry indicating that at the disciplinary proceeding, there was a report that they'd check with Chaplain to see whether this is a legitimately recognized holiday. What can you tell us? The record's pretty slim about the extent to which that was dealt with at the disciplinary hearing. So, Your Honor, these three points that you bring up and that the defendants bring up, the due process, adequacy of proof, and appropriateness of discipline, if we take a holistic look at what 803 is doing in this process, it's considering the appropriateness of discipline. And because the discipline was underpinned by this religious claim, it wasn't appropriate. So that's a general perspective. But a more textual perspective can actually be found at page 47 of our addendum, which is in our opening brief. And it says that these decision-makers shall consider these three factors, but it's a non-exhaustive list. So they were considered general.        Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Your Honor, there is no evidence in the record of the 802 actually being available to any inmates. We do have two cases — sorry, the 802 process being available to inmates when their grievance touches on discipline. We do have two cases coming out of Arizona where we know that 802 procedures that they have filed that have been related to discipline were actually rejected and unprocessed based on the form at page 81 of the record. This is not my question. My question is probably not well-articulated, but it's different. So for the minute, I'd like to just pretend there isn't a grievance procedure at all. I'm just talking about in the confines of the disciplinary procedure, the State's argument is that there were these three topics that shall be addressed at the — in the disciplinary procedure. And my question is, in that procedure, is a claim like the one-year claim was asserting an affirmative defense to the felony charge? Your Honor, I'd like to leave time for my opponent to make the remand argument, but if I may briefly respond, we believe that this would be an affirmative defense to the discipline because what underpinned the discipline was inappropriate, and so the two decisionmakers actually did have the opportunity to remedy by dismissing the charges. My question is, do you have any authority for that? We do not. Okay. Thank you. Thank you. Thank you, counsel. Good morning, and may it please the Court. Jane Kessner for appellant. In the event this Court is not prepared to reverse and remand for trial, it should, at a minimum, reverse and remand on the matter of exhaustion for the district court to apply Ross in assessing whether the 802 grievance process was actually available to Mr. Fuquay. Of course, further consideration by the district court is unnecessary to hold that the 802 grievance process was unavailable to Mr. Fuquay. The text alone proves that. But the record is inadequate to reach the opposite conclusion, that 802 was, in fact, available. Defendants have the ultimate burden to prove non-exhaustion, so they must conclusively establish that the 802 grievance process was available to Mr. Fuquay, and if they don't, this Court must at least remand to the district court for a fact-based inquiry into whether 802 was available in light of Ross. What's the showing that it was not available? You say non-availability is established by the present record, right? Yes, Your Honor. All right. What is that showing? So there are two arguments there. The first is that the actual text of 802 demonstrates that the 802 grievance process was unavailable to Mr. Fuquay because the primary issue that the State is saying he should have grieved was within the scope of his disciplinary process. And the second argument that we make in our briefs is that, at the very least, the 802 process in conjunction with the 803 process was so opaque that no reasonable prisoner could know that they were supposed to file a grievance when their primary issue was within the scope of their discipline. That's a Ross argument, right? The opaqueness argument is about Ross. Both of the arguments are about Ross. Our claim is that Ross changed what it meant to do a searching inquiry into availability and specifically clarified that we need to look at opaqueness when we do that kind of inquiry. So other courts have interpreted Ross as the ---- Kennedy, is there anything in 802 or 803 that says if you use the remedy in this section, you can't use the remedy in the other section? Anything so that's what the text of 802 says, yes. What is the precise language of 802? The language of 802, Your Honor, is the inmate grievance procedure does not serve as a duplicate appeal process or substitute appeal process for the following. And then it lays out those processes. And then it says inmates who attempt to file grievances and appeal for actions outlined up there will be instructed to follow the appeal process outlined in the specific department order. So our claim, Your Honor, is that at the very least, the defendants have not carried their burden to show that this was available. So on remand, we could look for example ----  Kagan.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. He initiated a grievance procedure. He did not. He did not initiate 802 through those letters. Okay. So the question is, had he done so, they would have had an obligation to tell him, right, that he had to vindicate his rights under 803? Is that right? Sorry. At what point? Your Honor, I see my time has also cut into our rebuttal time, but may I briefly ---- Certainly. Go ahead. I think you're saying your position is that he didn't initiate a grievance procedure, and that had he done so, they would have had an obligation to tell him which procedure he needed to pursue. Yes? So had he tried to grieve under our interpretation, then the prison would have had to tell him that that's not what 802 says, and he had to go through the disciplinary procedure. Yes. That's our interpretation of what 802 says. Thank you. Isn't there some tension between your argument, this is so opaque, it requires a Ross remand, and your co-counsel's argument that it's crystal clear based on the text? No. We're saying that our interpretation is crystal clear. So if you take our interpretation, it's clear. But if you assume that their private meaning that they're saying that 802 has is the actual meaning, then 802 becomes extremely opaque. So if you assume that they're right about what 802 does, then the text of 802 makes no sense. Thank you. I'd like to reserve the rest of our time. Thank you. Good morning. May it please the Court. I'm Joe Dylo. I'm with the Attorney General's Office of Arizona. Counsel's table with me is Greg Cody. I'm representing Defendants Francisco, Starnes, and Kamat. Mr. Cody represents Defendant Clark.  It seems to me the opaqueness problem, since that's your bailiwick, because I understand the division of duties here, is this Petitioner has invoked the grievance procedure before, and he's been able to follow it. That's your argument, I think, three different times before. But it seems to me that his problem was figuring out the Turducken problem. It was the problem was figuring out which one he's supposed to follow. Not that it was hard to follow. It was just which one is it. I believe that may be their argument, Your Honor. Yes. It's also my impression of the record. Yes, ma'am. And I'm asking you to respond to it, sir. How is he supposed to know that, given that it really is, it seems to me, the same core issue in both proceedings? What's your response, please? Because the language of the grievance procedure is absolutely clear. It's very clear. There's no opaqueness. The 803 process and the 802 process don't interact with one another. But what about — I think typically that's right. But what about this kind of a circumstance where it's the religious claim that he's got would have been an affirmative defense in the disciplinary proceeding, wouldn't it not? I'm not sure. They inquired into it. They asked the chaplain about it. They asked the chaplain about it, Your Honor, and that was in a — that was really an administrative step on their part. Well, didn't they actually raise it as a defense in the — in the grievance or in the discipline? In his — And the — and the correction officials addressed that? Yes, Your Honor. In his — in his disciplinary appeal, he did bring up the fact that he was disciplined and fired from his job, I believe. And the — We had to bring it up. That was the whole point, right? Yes. And the appeals officer did address that. But he addressed that in an administrative way. The grievance procedure is the only procedure that the Department of Corrections has where an inmate can actually grieve an issue. It's designed — it's designed to handle grievances. The appeals process isn't. And if I — if I may, Your Honor — But how is he supposed to defend himself through the disciplinary process if he can't raise the religious defense? The disciplinary process only addresses, Your Honor, three points, the sufficiency of proof — Right. — or adequacy of proof, the — the appropriateness of the sanctions. Right. And then — so he said the sanctions were not appropriate because I asked for a religious holiday and it was not accommodated. Is it — is it really the State's position that it wouldn't have been a defense? Not in the appeals process, Your Honor. Not in the disciplinary — But his felony was you — you refused to — to — you didn't follow the order. You didn't show up for work. And so let's say it's Christmas or Easter or something. The chaplain said, yep, that — we — we recognize that holiday. So is it really the State's position that it would not have been a defense to this felony charge? In that instance, it probably would have been a defense. Because it was a recognized holiday? I'm going from the record, yes, Your Honor. Okay. So what's the difference? Setting aside whether the holiday is recognized or not, and that's no small thing, but I'm just trying to figure out whether or not it's really the State's position that such a claim wouldn't have been — couldn't — couldn't have been redressed in the disciplinary proceeding, and I can't imagine how that could be right. Because in the disciplinary — in the appeals process, Mr. Fuqua didn't — he didn't expound on what — what the issue was. Okay. But the difference can't be that we recognize Christmas and we don't recognize the Feast of Trumpets. Hanukkah. Which was Hanukkah, basically, right? I'm sorry, Your Honor? Isn't it basically Hanukkah, the Feast of Trumpets? I don't know. I — I don't know if I said that. I mean, it's not far-fetched. It's an ecclesiastic. Wait a minute. Is it your position that, as a defense to a discipline imposed, an inmate can't raise religious beliefs and religious conviction as a defense? No, that's not — Won't be recognized? Is that — is that your position? That is not my — my position, Your Honor. Well, then why wasn't it recognized in this case? Because there was adequacy of proof. He — he actually did — What do you mean, proof? What proof can somebody say besides, you know, I'm — I'm whatever it is, X, and I can't work on — work on this holiday? What other proof do you need? He — he refused — he refused an assignment. I know, but he said I — I refused to work on this day because, you know, of my religion. Now, what proof do you need? What, that he's sincere or what? That you — you agree that his religion should be recognized? What — what proof is necessary when you say there was inadequacy of proof? The adequacy — the adequacy of proof that I'm talking about is the fact that he actually refused an assignment. That he actually what? He actually refused an assignment, Your Honor. Well, wait a minute. Is that — is that what he was disciplined for, for refusing an assignment? He was. Well, then what do you mean? There's not proof that he refused an assignment. Isn't that what you said? Yes, Your Honor. He — he — I don't understand that. He refused to work. That is what he was disciplined for. Right. And the appeals process took that into account. And they said he refused to work. I know, but this — but they didn't recognize the defense. I refused to work because it was a religious holiday, and my religion prevents me from working on this holiday. Right? The review process did not address that defense. Is that right? The review process — somewhat, Your Honor. The review process did address that defense, but they did it in sort of a cursory way. Well, but it didn't say we don't have jurisdiction. I mean, the — we're talking about exhaustion. I mean, we're not talking about the merits of his claim. So he presents the claim in the disciplinary process. The appeals — during the appeals process, it's addressed. And your argument here is they shouldn't have done any of that because it couldn't be raised in that context anyway. So even though it was addressed on the merits, you're saying that, no, that was — the prison was wrong. Is that — is that what your argument is? Address it in the first place. That the prison was wrong to — To address — to address his argument. No. I don't think the prison was wrong to address the argument in the way they addressed the argument. Right. So he — so he — the prison does address the argument in this process. He raises it. Why isn't that exhaustion? That's not exhaustion because the — the prison didn't — didn't have fair notice. The only way the prison gets fair notice is through the grievance procedure, Your Honor. No, I understand that part of your argument. But, in fact, it was on actual notice, right? It was — it was on actual notice, but it was absent a complaint and a grievance. Well, do you think he could have contested his discipline through the 803 — 802 procedure? Absolutely, Your Honor. And he should have. His discipline? Oh, his discipline. No. No. So he's — No, his — no, he exhausted that, yes. Right. Right. But his — his claim is that I was inappropriately disciplined because I have a religious claim. So isn't that claim, the claim that he was inappropriately disciplined, exhausted? It's — it's not exhausted, Your Honor, because he — he didn't — he didn't exhaust the available administrative remedy that he had at the time he was — You mean under 802? Under 802, yes, Your Honor. He was disciplined on the 24th. Was he told in the disciplinary proceedings, no, you have to raise that under 802? No, Your Honor. There wouldn't have been any reason for them to tell him that. Why? He said, you know, I didn't work because of a holiday. They said, no, you can't raise that here. You've got to raise it under 802. Did he tell them that? From — from the record, I don't — I don't believe that happened. I don't believe that he was told that, no, Your Honor. That is — it does bring up another issue, because the guidance the prisoners are given is that if you initiate the wrong process by initiating a grievance when it should be a disciplinary proceeding, we'll tell you that. But it doesn't work the other way. It was the State's argument that it would have been time-barred at that point? He couldn't initiate a grievance because it was too late? It would have been time-barred, Your Honor, because — because his — his — his right or his ability to grieve the discipline arose when he received it. You know, we take a really strict view of the requirement to exhaust remedies under this, as you know. And — and what you're saying about these two processes makes perfect sense to me. We're talking about really a different claim. But here it seems to me that the — the argument the prisoner has is baked in to the disciplinary proceeding, and that's the — that's the problem I'm having. I don't see how he can possibly pursue it and defend himself without raising it. It is the defense. It is the whole issue. There's a timing issue, Your Honor. And — and if it pleases the Court, I would like to defer to my — my co-counsel. However, I'm — Well, at least we're not going to sneak up on him. It's clear what it is we need to have him answer. There is a timing issue. The — the disciplinary appeals process arises after a conviction. The grievance process arises once the action that's grievable happens. I appreciate that. I understand that. Right. But here, what — what do you think he should have done? You think that he should have challenged his discipline in the general grievance process. Yes, Your Honor. And as opposed to the actual discipline process. That makes no sense to me. Well, not to mention that he wouldn't have known what the discipline was going to be at the time he had — the clock was running to — to initiate the grievance procedure. He didn't yet know he was going to lose 30 days and loss of privileges, and he didn't know all that. He didn't know he was going to be convicted and what he — correct, Your Honor. But he did know that he had been fired. He did know that he had received a discipline. But isn't the only way to get all of the relief, to get all of that wiped out, to pursue — pursue the disciplinary procedure? Because it wasn't — it wasn't imposed pursuant to the grievance. No, Your Honor. It would be to go through the — the inmate grievance procedure. Right. Right. Doesn't our — doesn't our discussion here for the last 10 minutes convince you that 802 and 803 are somewhat opaque? No, it doesn't, Your Honor. What it does convince me is that — that 802 — 802 is subject to multiple reasonable interpretations. And — That doesn't — that itself doesn't make it opaque? No, it doesn't. Multiple reasonable — Well, how is a — you know, how is an inmate supposed to know which of the multiple reasons is the applicable reason? Because he's aware of the grievance process. And — and the inmate — the inmates receive training on the grievance process. If it pleases the Court, I would like to turn this over to Mr. Cody. Thank you. Our questions have taken you over time, but we'll make sure it gets a chance to argue. Thank you, Your Honor. Yeah. Would you put seven minutes on the clock for him so he gets his full time? May it please the Court, Your Honor. My name is Gregory Cody. I'm with the law firm of McCarter & English, and I am here representing kitchen manager Clark. Mr. Clark, at the time in question, was one of the kitchen managers employed by the private company contracted to make the meals at the prison facility.  I guess I'd like to — I initially thought I'd be shifting gears and talking about the first argument made by inmate Fuqua, rather than opaqueness. And I'd like to just address some of those issues, if it pleases the Court, because I think that we're dancing around a couple of issues that really go to the nub of what you're trying to get at and why this process and the raising of religious issues in the And I think the overarching theme here is that the two systems are unequiv — are not equivalent, and the differences ultimately render this argument that Mr. Fuqua has made effectively a constructive exhaustion argument. The two processes, the procedures, they're entirely separate. They don't overlap. They don't interact. They're governed by different — In this case, they massively overlap. That's our problem. Well, I think in a sense, by subject matter, because he raised the religious issues, yes, that piece of it overlaps. But in terms of the — Counsel, that piece of it is the claim. But it's not the claim. And that's the central issue you need to recognize.  So I'm listening. So tell me not what I'm missing. The claim here is actually not a wrongful discipline claim. It's actually a First Amendment and RLUIPA free exercise claim. And as defined by the district court, it's premised solely on the defendant's refusal to grant his written requests for days off on what he termed his Sabbath and for the termination of his job. There's nothing in the disciplinary records or the record below that establishes that the claim was premised on a substantial burden imposed by wrongful discipline. So we're talking about this case in the entirely wrong context right now. Here's my problem. In the disciplinary procedure, it's pretty clear in the record, quite clear in the record, that the chaplain was consulted to determine whether or not this was a recognized holiday, right? Correct, Your Honor. If the chaplain had said yes, would that have been a defense in his disciplinary proceeding? I believe it probably would have, Your Honor. I don't know. I don't represent defendants that had anything to do with the disciplinary process. So I don't know really myself, as I stand here today, what transpired in the disciplinary process. Going back to Chief Judge Thomas's question, though, setting the merits aside, we're talking about exhaustion. Yes. And it seems to me if that was part and parcel, I'm using the phrase, you know, baked in to the disciplinary proceeding, and it really had to be addressed. And I'm just struggling to figure out why this wasn't consulted. It would have been an affirmative defense to the disciplinary charge itself only. It would have had nothing to do with the administrative decision to not grant him the day off or the termination of his job. And, in fact, those requests for relief aren't even authorized under DO-803. It's an entirely separate remedy scheme under DO-803. There's no connection or correlation between what you can obtain for relief under DO-803 and what you can obtain under DO-802. The systems are entirely inequivalent in that regard. And so that's the issue. When this Court ruled in Panero that exhaustion cannot occur, excuse me, I think this case is very similar to the Panero decision, where this Court said that an inmate cannot constructively exhaust by participating in an administrative system that is not equivalent to the grievance procedure that's available to him. And so what he should have done, and you've mentioned this a couple times already, he should have defended his disciplinary claims, but also, even before, and I think I should step back, at the time that he was terminated from his job and put on verbal report for discipline, the only remedy that was available to him was the DO-2 administrative grievance system, because in the text of DO-802, it doesn't say that you're prohibited from filing a grievance based because you've been charged with discipline. It says only that you can't use the grievance system to appeal a disciplinary  And the other thing is that you can't use disciplinary conviction to appeal a disciplinary conviction. Kagan. But, counsel, what you're really recommending is that the — first, that the prisoner is supposed to be able to figure that out. Second, that even though the materials indicate to prisoners that if you initiate the wrong procedure, we're going to tell you which one you're supposed to be in. And I think advocating for these parallel proceedings could actually reach inconsistent results. Is that really right? Well, I think, as to the first point, I think you've actually made my point, that if he had filed a grievance and it was incorrect, they would have told him well in advance that he couldn't do that because it was a disciplinary matter way before he was ever convicted of discipline. And so it never would have jeopardized his right to appeal his disciplinary conviction. But I think your position is he was supposed to pursue both of them. Well, I — because they're separate proceedings with separate procedures, separate tasks, separate timing by which they complete each task, and separate subject matter. So I think that's the problem. But the subject matter overlaps here. That's the problem. I mean, I understand your point if you're saying if you're going to make a standalone First Amendment claim, you've got to use the normal grievance procedure. But here he's using that as a defense to the discipline. And I don't think the two necessarily overlap in that regard. You can't use the general grievance procedure, I think you would agree, as a defense to discipline. True? Had he utilized the administrative system under DO-802 and obtained a favorable ruling, I think that would have been a strong defense to his criminal case under the rules in the disciplinary process under 803. So you think the — if he won on the general grievance, that he still could have been subject to discipline? I would highly doubt that that would be the result. We'll never know because he didn't pursue the grievance. Right. So how is he supposed to seek a remedy for the discipline? Well, through the — If you think that — in other words, if he wants to exhaust his claim concerning discipline, doesn't he have to just file his defense in the discipline and go from there? I think he first has to be convicted and then appeal the conviction in accordance with DO-803. But I may be missing your point, Your Honor, and forgive me if I'm — if I am. But, again, I think that the ultimate issue here is the different — and I would note as well that what this argument essentially boils down to is exactly what Ross expressly abrogated, and that's the statement that I exhausted by using the disciplinary appeal process because I thought and reasonably believed that's what the rules required me to do. And that is special circumstances that was initially adopted by the Second Circuit in Giano v. Gord. And, again, Ross expressly abrogated that and noted the very example that we've just given was present in Giano, and so that's what we're facing here. So the overarching responses to your questions, I think, are found in Pinero and Ross dealing with constructive exhaustion and special circumstances, at least on the first argument. I don't believe that you can exhaust by using the DO-803 disciplinary system. It's not proper exhaustion, and I think it's refuted by standing precedent. My time is running low. I would ask that you please affirm the entry of summary judgment. Kennedy. Let me ask a separate question. Tell me in a sentence why the PLRA exhaustion requirement applies to a private contractor. Well, Your Honor, that's a long explanation dealing with State action, and effectively it's an issue where the law recognizes Mr. Clark as a State actor by virtue of his It's a separate issue that we would have argued on the merits, and we have in the past. It's not before us today, and I haven't raised it in terms of exhaustion. It hasn't been raised by the Petitioner. It has not, Your Honor. Thank you. Thank you. Thank you. We'll put on four minutes for rebuttal. Your Honors, I'd like to first remind you that at a minimum, this Court has to remand to the district court for consideration of whether the 802 grievance process was actually available in light of Ross v. Blake's articulation of the availability  and how to do an opaqueness inquiry. The Third Circuit has already done this in Shumanis, and the Second Circuit actually found opaqueness, didn't even remand in Williams v. Priyotno, and the Fourth Circuit itself in Ross remanded back down to the district court because there were some lodgings showing that 802 might be available, some lodgings showing it might or the administrative remedy procedure there might be available, some lodgings showing it would not be available in light of the interaction between two systems. So at the very least, this Court has to remand. Would that be an expansion of Ross? This wouldn't be an expansion of Ross. But why not? I mean, counsel, your client was able to navigate the grievance procedure just fine on three prior occasions. His problem is he didn't know which one to exhaust, which one to pursue. And Ross doesn't really speak to that when it speaks about availability, does it? So Ross does sort of speak to that, Your Honor, because Ross talks also about the interaction between two systems, the administrative remedy procedure, which is Maryland's general grievance system, and the internal investigative unit. And in Ross, there was some evidence showing that when prisoners had a situation that was being investigated in the IIU, the internal investigative unit, then they were told that they could not go through the regular grievance procedure. And you don't have that here. We do have that here. There are two Arizona cases that we raise in our brief, Smith and Thomas, two other Arizona district court cases, where prisoners did file grievances related to their discipline, and those forms were returned, rejected, unprocessed. But your client didn't initiate your co-counsel's position as he didn't initiate a grievance procedure. And they agree. Defendants agree to that, that he never initiated a grievance procedure, yes. So our claim is he never initiated a grievance procedure because the text of 802 told him that he couldn't. And if they think that what the Arizona Department of Corrections meant was something different, then 802 was so opaque, Mr. Fouquet could not have known that he should have gone through the grievance procedure. So on that point, I'd like to clarify some points related to what opposing counsel has stated. So they claim that Mr. Fouquet's claim is this First Amendment and RLUIPA claim and has nothing to do with his discipline. But as we've explained, it was both the cause of and the defense against his discipline. And Mr. Dylo said that in the appeals process, Mr. Fouquet did not expound upon what the religious issue was. That is patently false. Pages 73 and 75 of the record feature Mr. Fouquet explaining in great detail how the denial of his prison job and discipline was due to a failure to recognize his religious claims. And the reason for that is that his generalized RLUIPA claim has not been exhausted. His RLUIPA claim is not a generalized RLUIPA claim. I didn't ask you that. I said if he's making a generalized RLUIPA claim, that's not exhausted. True? If you think that Mr. Fouquet is making a generalized RLUIPA claim that can be entirely separated from his discipline, yes. No, no. What I'm trying to get at is this. I understand, if I understand your argument, that you are only he's only asserting a RLUIPA claim with respect to his discipline. Is that right? His discipline is inextricably intertwined with the RLUIPA claim, yes. Is he asserting any RLUIPA claim that is not connected with his discipline? We don't think so, because it's all connected. But even if you think that's the case When you say all connected, I don't understand what you mean. So, so If he has a, let's assume, let's hypothetically assume that he is asserting a RLUIPA claim that is, that involves more than just his discipline. Yes, Your Honor. Okay. Has he exhausted that? That portion of it, which has nothing to do with discipline. Right. May I respond? Yes. So he is still exhausted because the text of 802 says that the prime, if the primary issue of the grievance is outside the scope, or sorry, is inside the scope of the disciplinary process, then you have to go through the disciplinary process. So even if it's true Isn't that the problem that you have here? If he's asserting, if he's just asserting a RLUIPA claim connected with his discipline, then there's a pretty good argument that he is exhausted through the discipline process. But if he's making a more generalized RLUIPA claim about his religion, it's very difficult, and I think probably impossible, to exhaust that claim through the discipline process, so. But he was told that he had to do so because the primary issue was the discipline. So Mr. Fuquay was still trying to do workarounds until the moment that he was disciplined. He was still trying to change around his work schedule. The thing that really set him off and that made him want to contest this treatment was that he was fired from his job and immediately disciplined. So that was the problem. So what is his claim here? Is it a generalized? I guess I still don't understand your answer. Is he making a generalized RLUIPA claim or just one relating to his discipline? All of his claims have to do with the discipline, and at the very least, the discipline is the primary issue that he's contesting. Okay. Thank you. Thank you. The case to serve will be submitted for decision. Thank you for your pro bono representation, and we will be in recess for the morning.
judges: Tashima, Thomas, Christen